UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MARIO E. CASTRO,

                        Plaintiff,

            - against -

NEWREZ LLC d/b/a SHELLPOINT
MORTGAGE SERVICING, *et al.*,

                    Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-6340 (PKC) (JMW)

PAMELA K. CHEN, United States District Judge:

Plaintiff Mario E. Castro ("Castro" or "Plaintiff"), proceeding *pro se*, commenced this action on October 13, 2022, against six Defendants: consumer reporting agencies Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), and Equifax Information Services LLC ("Equifax") (together, the "CRA Defendants"); NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"); Bank of New York Mellon ("BoNYM"); and Real Time Resolutions, Inc. ("RTR") (collectively, "Defendants"). The Amended Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, New York Uniform Commercial Code ("N.Y. U.C.C.") § 9-210 *et seq.*;[1] and common law defamation. (Am. Compl., Dkt. 16 ("Am. Compl."), ¶ 1.)

Before this Court are three motions to dismiss filed by (1) the CRA Defendants; (2) Shellpoint and BoNYM; and (3) RTR, respectively. Considered together, the motions to dismiss

---

[1] Though Plaintiff alleges violations of both the Uniform Commercial Code ("U.C.C.") and the N.Y. U.C.C., the Court only considers the latter, *i.e.*, the version of the U.C.C. adopted by New York State. *See Starr v. VSL Pharms., Inc.*, 509 F. Supp. 3d 417, 444 (D. Md. 2020) ("The UCC is a 'model code' that 'does not itself have the force of law . . . . Instead, it has been enacted with modifications in the several states.'" (quoting *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1048 (Fed. Cir. 2001))).

advance three bases for dismissal.  First, the CRA Defendants, Shellpoint, and BoNYM move to dismiss for failure to satisfy Article III standing, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1).[2]  Second, all Defendants move to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).  Lastly, Shellpoint, BoNYM, and RTR move to dismiss for insufficient service of process pursuant to Rule 12(b)(5).  For the reasons stated below, the Court grants the Rule 12(b)(1) motions, dismisses the Amended Complaint, and denies the remaining motions as moot.

## BACKGROUND

### I.     Relevant Factual Background

This action arises from a dispute regarding a balance Plaintiff allegedly owes on a Shellpoint "mortgage debt account."  (*See* Am. Compl. ¶ 22.)  Plaintiff claims that Shellpoint, and consequently the CRA Defendants, reported and disseminated "inaccurate and misleading information" about the balance Plaintiff owes on this account, as seen on his credit reports. (*Id.* ¶¶ 21–22.)  Elaborating on the alleged inaccuracies, Plaintiff asserts that he has "already tendered payment . . . for the full amount of the credit loaned . . . in the form of a 'promissory note' [] which was accepted as collateral for the loan" in March 2006.  (*Id.* ¶ 38.)  Plaintiff explains that the promissory note contained his "original wet-ink signature," (*id.* ¶ 36), and "could be deposited in exchange for federal reserve bank notes[,] which has equal value [as to] what was lent to [][P]laintiff," (*id.* ¶ 38).  Thus, Plaintiff argues, his debt should be deemed fully repaid.

---

[2] Though the CRA Defendants stylize their Article III standing argument as part of their Rule 12(b)(6) motion, "[a] motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly is properly brought under [Rule] 12(b)(1)."  *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).  The Court thus considers the CRA Defendants' Article III standing arguments as part of its Rule 12(b)(1) analysis.

In October 2020, Plaintiff reported these alleged inaccuracies to the CRA Defendants. (*Id.* at ECF 42–46 (Plaintiff's letter to Experian dated 10/15/2020);[3] *id.* ¶ 26 (stating that Plaintiff sent out letters to "all defendants" that were "similar or identical" to the letter sent to Experian).) Subsequently, the CRA Defendants investigated Plaintiff's disputes and sent him letters notifying him of the dispute results.  (*Id.* ¶¶ 28–29; *see, e.g.*, *id.* at ECF 72–82 (dispute result letter dated 11/7/2020 from Equifax verifying that the Shellpoint mortgage account belongs to Plaintiff); ECF 85–86 (dispute result letter dated 12/11/2020 from Trans Union verifying Plaintiff's account information as accurate).)  Plaintiff maintains that the CRA Defendants failed to conduct a proper investigation, and that they "continue to publish and disseminate [] inaccurate information to other third parties, persons, entities and credit grantors." (*Id.* ¶ 43.)  In addition, Plaintiff claims that, in 2019, he directly disputed the account with Shellpoint, which "failed to report the account as disputed" to the CRA Defendants.  (*Id.* ¶ 34.)  Lastly, Plaintiff contends that Defendants Shellpoint, BoNYM, and RTR failed to timely respond to his "Request for an Accounted Accounting," which he submitted in late October 2022.  (*Id.* ¶ 35; *see also id.* at ECF 36–41.)[4]

## II.    Relevant Procedural Background

Plaintiff filed the original complaint in this action on October 13, 2022.[5]  (Dkt. 1.) Following an Order to Show Cause, (10/26/2022 Dkt. Order), the Honorable James M. Wicks,

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[4] Though the Amended Complaint states that the request was sent "between Nov. 1 and 2 of 2022," (Am. Compl. ¶ 35), the exhibits attached therein show the date of the request to be October 26, 2022, (*id.* at ECF 36–41).

[5] Neither BoNYM nor RTR was named in the original Complaint, presumably because Plaintiff had not yet submitted any requests for an accounting from them as of October 13, 2022. (*See* Dkt. 1.)

U.S. Magistrate Judge, issued a *sua sponte* report and recommendation finding that Plaintiff had failed to allege a concrete, particularized harm in the original complaint and therefore did not have Article III standing, (Dkt. 12). In April 2023, Plaintiff sought leave to file an Amended Complaint curing the deficiencies as to standing. (Dkt. 14.) Though finding no error with Judge Wicks's report and recommendation, the Court noted that Plaintiff's proposed Amended Complaint contained additional evidence as to the harms alleged and thus allowed Plaintiff to proceed with filing the Amended Complaint. (Dkt. 15.) Plaintiff filed his Amended Complaint on April 18, 2023. (Dkt. 16.)

On May 24, 2023, the Court ordered Plaintiff to "comply with his Rule 4 obligations . . . and promptly file an Affidavit of Service for each Defendant." (Dkt. 18.) Plaintiff filed his affidavit of service on June 26, 2023. (Dkt. 30.) Plaintiff subsequently filed an amended proof of service on June 30, 2023. (Dkt. 35.) On the same day, Plaintiff requested an extension of time to file his proof of service, (Dkt. 36), which the Court denied as moot, (7/10/2023 Dkt. Order). Between June and July 2023, Defendants submitted requests for pre-motion conferences on their anticipated motions to dismiss. (*See* Dkts. 19, 42–43.) The Court denied their requests as unnecessary and set a briefing schedule. (*See* 10/10/2023 Dkt. Order.) Following issues with mailing and receiving motion papers in a timely manner, and taking into account Plaintiff's *pro se* status, the Court set a revised briefing schedule. (*See* 12/23/2023 Dkt. Order.) Subsequently, three separate motions to dismiss were filed by (1) the CRA Defendants, (*see* Dkt. 64), (2) by BoNYM and Shellpoint, filing together, (*see* Dkt. 71), and (3) by RTR, (*see* Dkt. 75). All three motions were fully briefed as of March 15, 2024. Subsequently, Plaintiff filed three sur-replies without the Court's permission. (Dkts. 73, 79, 81.) The Court reserved judgment on whether it would consider

these additional filings when resolving Defendants' motions to dismiss. (*See* 4/17/2024 Dkt. Order.)[6]

## DISCUSSION

### I.    Plaintiff's Claims Are Dismissed Pursuant to Rule 12(b)(1)

Five of the six Defendants in this action—namely, the CRA Defendants, BoNYM, and Shellpoint—move to dismiss Plaintiff's Amended Complaint for lack of Article III standing pursuant to Rule 12(b)(1). "Subject-matter jurisdiction is a threshold issue that a court must consider before addressing the merits of any particular case." *Dembski v. Sec. & Exch. Comm'n*, 437 F. Supp. 3d 286, 290 (W.D.N.Y. 2020) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

### A.    Legal Standard

Article III of the Constitution "confines the federal judicial power to . . . 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005). If "jurisdictional facts are placed in dispute [on a Rule 12(b)(1) motion], the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

---

[6] To the extent that the Court does consider them, the Court notes that Plaintiff's sur-replies largely reiterate the same arguments from Plaintiff's opposition briefs.

redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "'The party invoking federal jurisdiction bears the burden of establishing' each element of standing, which 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at successive stages of litigation.'" *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300 (2d Cir. 2021) (quoting *Lujan*, 504 U.S. at 561). "[H]ere, at the motion-to-dismiss stage, 'general factual allegations of injury resulting from the defendant[s'] conduct may suffice.'" *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 253 n.13 (E.D.N.Y. 2021) (quoting *Lujan*, 504 U.S. at 561).

"To demonstrate injury in fact, a plaintiff must show the invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (citations omitted). Physical or monetary injury to the plaintiff is a concrete injury-in-fact under Article III. *See TransUnion*, 594 U.S. at 425. To satisfy the fairly traceable requirement of Article III, a plaintiff must "demonstrate a causal nexus between the defendant's conduct and the injury." *See Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (citations omitted). As compared to the standard for the merits stage, the pleading standard "for Article III standing is not whether the alleged injury is *plausibly* fairly traceable, but, rather whether the injury is *possibly* fairly traceable." *Dennis v. JP Morgan Chase & Co.*, 343 F. Supp. 3d 122, 156 (S.D.N.Y. 2018). Finally, Article III requires that plaintiffs demonstrate "the likelihood that the relief requested, would in principle, redress the alleged injury." *Heldman ex rel. of T.H. v. Sobol*, 962 F.2d 148, 157 (2d Cir. 1992).

### B.    Application

Here, Plaintiff's allegations as to the "concrete harm[s]" he suffered are the same with regards to the CRA Defendants, Shellpoint, and BoNYM. These alleged harms include:

a diminished credit score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denials of credit and credit card applications, higher interest rates on loans and credit cards that would otherwise be affordable and other damages that may be ascertained at a later date[.]

(Am. Compl. ¶¶ 51, 67, 83.)

Broadly speaking, Plaintiff advances two theories of injury against the CRA Defendants, Shellpoint, and BoNYM.  First, Plaintiff alleges several FCRA violations, specifically of §§ 1681i and 1681e(b) as to the CRA Defendants,[7] and § 1681 s-2(b) as to Shellpoint.[8]  In support of this theory, Plaintiff alleges that Shellpoint and BoNYM furnished inaccurate credit information about Plaintiff to the CRA Defendants, who then disseminated such information to potential creditors, causing Plaintiff injury in the form of denied credit applications.  (*See* Am. Compl. ¶¶ 51, 67, 83;

---

[7] Section 1681e(b) of the FCRA imposes a duty on consumer reporting agencies "to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  Section 1681i sets out procedures consumer reporting agencies must follow to investigate disputes as to the accuracy of reported information.  *Id.* § 1681i.

[8] Section 1681s-2(b) of the FCRA outlines the duties of a "furnisher," which is "defined by federal regulations as 'an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.'"  *Weber v. Goldman Sachs Bank USA*, No. 21-CV-4807 (PKC) (VMS), 2023 WL 2614144, at *2 (E.D.N.Y. Mar. 23, 2023) (quoting 16 C.F.R. § 660.2).  Under Section 1681s-2(b), once a furnisher "receiv[es] notice" of a dispute, the furnisher must:

(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency . . . ; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . . ; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . . , (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

*see id.* at ECF 31, 33–34.)  Second, Plaintiff argues that Shellpoint and BoNYM, alongside RTR, violated the N.Y. U.C.C. § 9-210 *et seq.* by failing to timely produce an "authenticated record of accounting" of his mortgage loan.  (Am Compl. at ¶¶ 35, 80, ECF 40.)  Plaintiff does not elaborate further on the connection between this statutory violation and his alleged injuries.  The Court considers each of Plaintiff's arguments in turn.[9]

### 1.    Plaintiff's FCRA Claims

The Court assumes without deciding that Plaintiff sufficiently pled injury-in-fact with respect to his FCRA claims against these Defendants because Plaintiff has failed to allege a causal connection between the injury he suffered as a result of Shellpoint's, the CRA Defendants', and BoNYM's conduct.[10]

To establish a causal connection for purposes of Article III standing, the alleged injury must be "fairly traceable" to the challenged action of the defendants.  *Chevron Corp. v. Donziger*, 833 F.3d 74, 120 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 560–61) (cleaned up).  Moreover, "there is no standing if the party cannot proffer facts establishing that all links in the causal chain are satisfied."  *Williams ex rel. United Guardianship Servs. v. Shah*, No. 12-CV-3953 (RRM)

---

[9] Plaintiff also alleges common law defamation claims against the CRA Defendants and Shellpoint.  The FCRA, however, preempts "any action or proceeding in the nature of defamation . . . with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).  Because Plaintiff does not plausibly allege that the CRA Defendants or Shellpoint acted with malice or willful intent to injure, (*see* Am. Compl. ¶¶ 72–83), the FCRA bars Plaintiff's common law defamation claims against them.  "[C]onclusory allegations . . . do not support a plausible inference of actual malice."  *Margolies v. Rudolph*, No. 21-CV-2447 (SJB), 2022 WL 2062460, at *7 (E.D.N.Y. June 6, 2022).

[10] The Court notes that Shellpoint and BoNYM incorrectly assume that a prior Order of this Court "held [that] Mr. Castro's amended complaint is sufficient to allege an injury-in-fact." (Mem. L. Supp. Mot. Dismiss, Dkt. 71 ("Shellpoint & BoNYM Mem."), at 15.)  While the Court in that Order allowed Plaintiff to file an Amended Complaint after considering "Plaintiff's *pro se* status . . . [and] the sequence of procedural events in this case," it did not make a specific finding as to whether the injury-in-fact prong of Article III standing was satisfied.  (Dkt. 15 at 10–11.)

(RML), 2014 WL 1311154, at *3 (E.D.N.Y. Mar. 30, 2014) (quoting *Garelick v. Sullivan*, 987 F.2d 913, 919 (2d Cir. 1993)) (internal quotation marks omitted), *aff'd on other grounds sub nom. Backer ex rel. Freedman v. Shah*, 788 F.3d 341 (2d Cir. 2015). The CRA Defendants contend that Plaintiff's alleged damages "cannot be fairly traceable to CRA Defendants' actions" since the injury "is because of [Plaintiff's] refusal to pay his [own] debts." (Mem. L. Supp. Mot. Dismiss, Dkt. 65 ("CRA Mem."), at 10.) Similarly, Shellpoint and BoNYM argue that "[t]here is no basis to conclude the injuries [Plaintiff] purportedly suffered were caused by Shellpoint or BoNYM" and that "the likely cause of [his] injuries is [his] own failure to pay his debts." (Shellpoint & BoNYM Mem. at 15.)

Here, Plaintiff alleges that his credit reports were inaccurate because they showed an outstanding balance on his Shellpoint mortgage account that should not exist because Plaintiff allegedly had "already tendered payment . . . for the full amount of the credit loaned . . . in the form of a 'promissory note' which was accepted as collateral for the loan." (Am. Compl. ¶ 38.) But Plaintiff makes no factual allegations from which to plausibly infer that a personally signed promissory note would clear the balance on his Shellpoint mortgage account. Indeed, there is no basis for concluding that a mortgage loan, *i.e.*, a promise to pay, can be satisfied by yet another promise to pay. Plaintiff therefore has not plausibly alleged that Shellpoint, the CRA Defendants, and BoNYM acted unlawfully by treating and reporting Plaintiff's Shellpoint mortgage loan account as in arrears, and that Plaintiff was thereby injured by *their* conduct. Rather, the only plausible inference is that Plaintiff's own decision to try to satisfy his outstanding mortgage loan balance with a promissory note, as opposed to real money—and not the "challenged conduct" of Shellpoint, the CRA Defendants, and BoNYM, *Chevron Corp.*, 833 F.3d at 120—caused his claimed injuries, *i.e.*, the negative credit reports and the subsequent denial of credit. "Self-inflicted

injury that results from a plaintiff's personal choices rather than a defendant's conduct will not confer standing." *Taylor v. Bernanke*, No. 13-CV-1013 (ARR) (JXA), 2013 WL 4811222, at *10 n.5 (E.D.N.Y. Sept. 9, 2013); *see also Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013), *as amended* (Mar. 21, 2013) ("An injury is self-inflicted so as to defeat the causation necessary to establish standing, however, 'only if . . . the injury is so completely due to the plaintiff's own fault as to break the causal chain.'" (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000))).  Thus, based on the facts alleged in the pleadings, Plaintiff's own action is the "primary cause of [his] own alleged injury" and thus he does not have Article III standing to bring his claims.  *See Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006).

Separately, Plaintiff alleges that the credit reports causing his injuries were inaccurate because there are clear discrepancies in the account information reported by the CRA Defendants. (*E.g.*, Am. Compl. ¶ 29; *see also id.* at ECF 30.)  For example, Plaintiff points to a six-day discrepancy between the Equifax and Trans Union credit reports for the date on which his Shellpoint account was opened.  (*Id.* ¶ 29.)  Some other discrepancies in his credit report are more significant, such as the "Past Due Amount" ($65,000 versus $203,852), "Comments" (noting only that the Experian account is disputed), "Date Last Active" (showing a date in 2022, 2016, and 2015 for Trans Union, Experian, and Equifax respectively), and "Date of Last Payment" (showing a difference of five years between Trans Union and Equifax).  (*Id.* at ECF 30.)[11]

However, Plaintiff has failed to identify what injury resulted from these alleged inaccuracies in these credit reports.  To the extent he is relying on the alleged denial of credit as

---

[11] The Amended Complaint does not indicate which version of the account information is correct.

the injury, he fails to allege any facts supporting a causal connection between the inaccuracies and the denial of credit.  Assuming that Plaintiff's theory is that *all* of the reported versions of his mortgage account information were inaccurate because Shellpoint, BoNYM, and the CRA Defendants failed to consider Plaintiff's satisfaction of his mortgage loan debt using a promissory note, that theory fails for the same reason just discussed, the absence of causation, *i.e.*, the fact that Plaintiff is the primary source of his own alleged injury and therefore does not have Article III standing.

Accordingly, the Court dismisses Plaintiff's FCRA claims against Shellpoint, the CRA Defendants, and BoNYM.

### 2.    Plaintiff's N.Y. U.C.C. Claims

Lastly, Plaintiff alleges that Shellpoint, BoNYM, and RTR failed to timely produce an "authenticated record of accounting" of the mortgage loan, in violation of N.Y. U.C.C. § 9-210 *et seq.*  (*Id.* ¶¶ 35, 80; *see id.* at ECF 40.)  Though RTR does not raise standing as an argument in its moving papers, the Court may *sua sponte* consider standing as to all Defendants.  *Green Haven Prison Preparative Meeting of Rel. Soc'y of Friends v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) ("Because the question of standing goes to the constitutional limitations on the judicial [p]ower of the United States, . . . [the Court is] entitled at any time *sua sponte* to delve into the issue of standing even if defendants do not raise the issue." (internal quotation marks omitted)).

Plaintiff does not sufficiently allege an injury-in-fact stemming from Defendants' failure to timely produce a record of accounting.  There is nothing in the pleadings that plausibly explains how Defendants' violation of the statute, assuming that such a violation even occurred, would have caused Plaintiff's alleged harms.  A technical statutory violation only confers Article III standing

if the plaintiff demonstrates an actual and concrete injury resulting from that violation.[12]  *See TransUnion*, 594 U.S. at 426–27.  Here, Plaintiff fails to demonstrate such injury and therefore fails to satisfy the requirements of Article III standing.  For these reasons, the Court dismisses Plaintiff's N.Y. U.C.C. claims against Shellpoint, BoNYM, and RTR.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Rule 12(b)(1) motions to dismiss for failure to satisfy Article III standing.  Accordingly, Defendants' motions to dismiss pursuant to Rules 12(b)(5) and 12(b)(6) are both denied as moot.  The Clerk of the Court is respectfully requested to enter judgment in this case and terminate this matter.  Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 269 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 19, 2024
      Brooklyn, New York

---

[12] Section 9-210 provides for the recovery of damages and a statutory award of $500.  Section 9-625(f), which sets forth the authorized remedies for violations of N.Y. U.C.C. § 9-210, provides that a debtor "may recover damages under subsection (b) [of that Section], and, in addition, [$500] in each case from a person that, without reasonable cause, fails to comply with a request under Section 9-210." N.Y. U.C.C. § 9-625(f).  Subsection (b), in turn, says that" a person is liable for damages in the amount of any loss caused by a failure to comply with this article." *Id.* § 9-625(b).